J-S08005-22

2022 PA Super 67

| IN THE INTEREST OF: E.L.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 536 MDA 2021 |

Appeal from the Dispositional Order Entered November 3, 2020
In the Court of Common Pleas of Luzerne County Juvenile Division at
No(s): CP-40-JV-0000098-2020

BEFORE: BOWES, J., NICHOLS, J., and McCAFFERY, J.

OPINION BY BOWES, J.: **FILED: APRIL 13, 2022**

E.L.W. appeals from the dispositional order which also adjudicated her delinquent for acts constituting terroristic threats. Since we conclude that the juvenile court's factual findings do not support the adjudication of delinquency, we vacate the juvenile court's order.

The juvenile court summarized the history of this case as follows.

> On November 2, 2020, Officer Matthew Godlewski testified that he is a police officer for Wilkes-Barre Township Police Department. Officer Godlewski indicated that on June 2, 2020, while on duty, he became aware of a social media post regarding proposed "looting" at the Walmart store in Wilkes-Barre Township, Luzerne County, PA. When shown a hard copy print of the social media post, Officer Godlewski identified the post as appearing on Facebook. The post specifically stated as follows, "We looting Walmart in Wilkes-Barre, PA tomorrow at 8 p.m. in all black, or just me?"
>
> Officer Godlewski testified that stores throughout the United States were experiencing an increase in looting during the summer of 2020. Officer Godlewski explained that he interpreted the social media post to indicate a serious threat similar to someone threatening to "blow up" a school. In light of what was

occurring throughout the United States in the summer of 2020, specifically looting, the post was taken very seriously by law enforcement. Officer Godlewski investigated the matter further and discovered the identity of the juvenile who initiated the post to be that of [Appellant]. He then reached out to a detective, Lee Ann Rey, who subsequently assumed responsibility for the investigation.

Mr. Louis Bernardi testified that he is a Luzerne County juvenile probation officer assigned to supervise [Appellant]. He began supervising [her] in January 2019. Officer Bernardi testified that he was contacted by the chief of juvenile probation, Angela Zera, who requested that he independently investigate the allegations regarding [Appellant]'s role in generating the subject social media post. Officer Bernardi stated that he spoke to [Appellant]'s mother on June 2, 2020 and was able to speak to [Appellant] the following day on June 3. According to Officer Bernardi, [Appellant] apologized for her actions and stated that she did not mean to post the statement on Facebook. Officer Bernardi stated that [Appellant] indicated that she was never going to "loot" Walmart, that she was joking around and had no intention of doing it. Officer Bernardi stated that he entered into a discussion with [Appellant] wherein he explained the consequences of her actions. Officer Bernardi testified that [Appellant] appeared not to grasp the consequences of her actions prior to initiating the social media post.

[Appellant] was charged with a single count of terroristic threats. On November 2, 2020, after an adjudication hearing, the court determined that the juvenile, [Appellant] committed the delinquent act of terroristic threats pursuant to 18 Pa.C.S. [§] 2706(a)(3). [The same day, the juvenile ordered Appellant to continue on her preexisting probation, to provide twenty-five hours of community service, and to pay court costs.] On November 12, 2020, [Appellant] filed a post-dispositional motion for reconsideration for which the court scheduled a hearing for December 14, 2020. After receipt of the transcript of the proceeding and deliberation, on March 24, 2021, the court entered an order denying the Motion for Reconsideration and affirming the adjudication of delinquency of [Appellant].

Juvenile Court Opinion, 6/22/21, at 1-2 (cleaned up).

Appellant filed a timely notice of appeal, and she and the juvenile court complied with Pa.R.A.P. 1925. Appellant presents the following questions for our review:

1. Whether the Commonwealth did not present sufficient evidence to conclude that the Appellant violated 18 Pa.C.S.A. § 2706(a)(3).

2. Whether the Court erred when it misapplied the law as to the intent necessary to conclude that the juvenile Appellant violated 18 Pa.C.S.A. § 2706(a)(3).

3. Whether the terroristic threats statute violates the Appellant's 1st Amendment right under the United States Constitution to free speech.

Appellant's brief at 7-8.

Appellant's first two issues challenge the juvenile court's determination that the Commonwealth offered sufficient evidence to establish that her conduct met all of the elements of the crime of terroristic threats. The following principles govern our consideration of those claims:

When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*In Interest of P.S.*, 158 A.3d 643, 650 (Pa.Super. 2017) (cleaned up). Further, "[b]ecause evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Interest of D.J.B.*, 230 A.3d 379, 387 (Pa.Super. 2020) (cleaned up).

> Or legislature has defined the crime of terroristic threats as follows:

> A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

>> (1) commit any crime of violence with intent to terrorize another;

>> (2) cause evacuation of a building, place of assembly or facility of public transportation; or

>> (3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706(a).

We have explained that the purpose of the terroristic threats statute "is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." *Commonwealth v. Kline*, 201 A.3d 1288, 1290 (Pa.Super. 2019) (cleaned up). As such, "neither the ability to carry out the threat nor a belief by the person threatened that it will

- 4 -

be carried out is an essential element of the crime." *Id*. (cleaned up). *See also In re J.H.*, 797 A.2d 260, 262 (Pa.Super. 2002) ("Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense.").

As Appellant was adjudicated delinquent pursuant to subsection (a)(3), the question before us is whether the Commonwealth established that she communicated a threat to cause serious public inconvenience and that she did so with reckless disregard of the risk of causing said inconvenience. Appellant does not dispute that she made the communication at issue or that it constituted a threat. Rather, she maintains that the juvenile court erred in finding that the Commonwealth established that she communicated the threat with the requisite *mens rea*, namely reckless disregard of the risk of causing such inconvenience.

Specifically, Appellant contends that the Commonwealth failed to produce any evidence that she had appreciated the risk of serious public inconvenience that her threat might cause but chose to disregard that risk and proceed anyway. *See* Appellant's brief at 17-18. She argues that the juvenile court, in analyzing the terroristic threats statute, improperly focused on the effect that the communication had on the people who received it, instead of whether Appellant was both conscious of the risk that her threat would have that effect and that she disregarded that risk when she made her Facebook post. *Id*. at 22. Indeed, Appellant asserts that the trial court's factual finding

- 5 -

that Appellant did **not** comprehend the effect her post would have is incompatible with a finding that she acted with conscious disregard, and instead supports only that she acted negligently. *Id*. at 22-23.

We agree with Appellant that the juvenile court misapprehended the nature of the *mens rea* of recklessness, and that the court's factual findings as to Appellant's state of mind cannot support the adjudication in this case.

Our legislature has defined the varying degrees of criminal culpability as follows:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and

the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

(4) A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b).

Thus, in contrast with negligence, which involves a person choosing to act when he should be, but is not actually, subjectively aware that he is creating a substantial and unjustifiable risk of harm, recklessness is closer to a knowing, intentional act. *See*, *e.g.*, *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa.Super. 2014). As we have explained, "the *mens rea* of recklessness implicates knowledge in two ways: (1) the actor must consciously (*i.e.*, with knowledge) disregard a substantial and unjustifiable risk; and (2) the risk that the actor disregards is measured by the circumstances known to the actor." *Commonwealth v. Sitler*, 144 A.3d 156, 164 (Pa.Super. 2016). Therefore, a conscious disregard of a risk necessarily "involves first becoming aware of the risk and then choosing to proceed in

spite of the risk."[1]  ***Commonwealth v. Sanders***, 259 A.3d 524, 532 (Pa.Super. 2021) (*en banc*) (cleaned up).

Specifically regarding § 2706(a)(3), our Supreme Court recently observed that "it is the risk of fear, terror, and intimidation, inherent to the threat itself, which is consciously disregarded by the reckless speaker.  Even though the speaker may not specifically intend the prohibited result, he **contemplates its substantial risk and chooses to ignore it**." ***Interest of J.J.M.***, 265 A.3d 246, 265 (Pa. 2021) (emphasis added).  In other words, unless the Commonwealth produced evidence in the instant action to substantiate a finding that Appellant was consciously aware of a substantial and unjustifiable risk that terror or public inconvenience would result from her communication, the evidence cannot support her adjudication pursuant to § 2706(a)(3).

The juvenile court in the case *sub judice* instead operated under the belief that the effect of the threat upon the listener was paramount, and that

---

[1]  Our sister court has further expounded upon the meaning of the term as follows.  "As to the term consciously disregards, Merriam-Webster's defines conscious as perceiving, apprehending, or noticing with a degree of controlled thought or observation." ***S.H. v. Dep't of Human Servs.***, 228 A.3d 22, 28 (Pa.Cmwlth. 2020) (cleaned up).  "Disregard is defined as to pay no attention to: treat as unworthy of regard or notice." ***Id***. (cleaned up).  Therefore, "[t]o act recklessly, [the accused] had to have perceived, but purposely ignored, the substantial and unjustifiable risk [that the proscribed harm would result]." ***Id***. (cleaned up).  While the decision is not binding on this Court, we value its further elucidation of the concepts at issue. ***See***, ***e.g.***, ***Commonwealth v. Schultz***, 133 A.3d 294, 321 (Pa.Super. 2016) (noting that Commonwealth Court decisions are not binding on us but may serve as persuasive authority).

recklessness, or a conscious disregard, was established if Appellant proceeded to make a threat without first contemplating or appreciating the risks:

> In my view, the effect of the statement is the crux of the interest of [subsection (a)(3)] of the statute, the main fact. I've had testimony from a detective and an officer of the effect that it had upon them. I've had testimony from two business owners of the effect that it had upon two major businesses within the area. I had testimony from the detective telling me about the effect that that statement had on smaller businesses within the same strip mall [in] which Wal-Mart is located. The effect was grave. The effect caused a reaction that we have heard about here today.
>
> [Appellant], I believe that when you made this statement you did not understand the effect, but that's the nature of a reckless disregard.
>
> . . . .
>
> That's the nature of a reckless disregard, is not understanding how cavalier that statement was and the ripple effect and the domino effect that it had on other people's livelihoods, other people's psyche, other people's sense of community safety, the impact it had on resources within our community, the fact that other's lives were either directly or indirectly impacted; that, to me, is the nature of reckless disregard.

N.T. Adjudication Hearing, 11/2/20, at 49-50.

Manifestly, the juvenile court's understanding of conscious disregard is inconsistent with the above precedent. The effect of Appellant's communication on its viewers, namely, placing them in fear that her threat might be carried out, while representative of the harm that our legislature sought to address, is not an element of the crime of terroristic threats. *See Kline*, *supra* at 1290. More importantly, the fact that Appellant made her communication without understanding the potential harm that she risked

- 9 -

creating at most would support a finding that she acted negligently. **See** 18 Pa.C.S. § 302(b)(4) ("A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk . . . of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.").

To rule that Appellant's actions violated § 2706(a)(3), the juvenile court was required to find, based upon evidence produced by the Commonwealth at the adjudicatory hearing, that Appellant was in fact subjectively aware of a substantial and unjustifiable risk that her Facebook post would cause the proscribed harm, but that she consciously decided to disregard that risk and make the post anyway. The juvenile court's finding that Appellant did not in fact appreciate the possible effects of her communication invalidates her adjudication of delinquency pursuant to subsection (a)(3). **See Interest of J.J.M.**, **supra** at 274 (vacating adjudication of delinquency pursuant to § 2706(a)(3) where there was "simply no evidence on this record from which to conclude appellant was aware the ambiguous remark he made might cause

a serious public inconvenience or terror, and consciously proceeded to disregard that risk").[2]

The Commonwealth argues that the evidence produced at the adjudicatory hearing did establish that Appellant acted with the requisite *mens rea*. Specifically, the Commonwealth asserts:

> In the instant case, the backdrop to Appellant's post was the reporting of riots and looting throughout the spring across the country. Appellant's post raised the specter of events occurring across the country coming to Wilkes-Barre Township. Appellant's claim that she did not know how her post would be perceived is disingenuous. The events occurring elsewhere put Appellant's post in context. It strongly implies that Appellant was aware of

---

[2] **Also compare Commonwealth v. Sanders**, 259 A.3d 524, 533 (Pa.Super. 2021) (*en banc*) (reversing conviction for want of recklessness because "[a]bsent from this case is any evidence that Appellant was consciously aware of a substantial and unjustifiable risk created by her conduct that would cause injury to the victim."); and **Commonwealth v. Gilliland**, 422 A.2d 206, 207 (Pa.Super. 1980) (reversing convictions requiring proof of recklessness because "[t]here was no conscious realization of a substantial risk which was subsequently disregarded, but rather a general lack of awareness of the situation on the part of the appellant."); **with Commonwealth v. Sitler**, 144 A.3d 156, 164 (Pa.Super. 2016) (*en banc*) (ruling that the defendant's prior vehicular manslaughter conviction was pertinent to the recklessness element of homicide by vehicle since the Commonwealth was required to prove that he had "knowledge that his conduct created a risk that he subsequently disregarded"); **Commonwealth v. Vogelsong**, 90 A.3d 717, 720 (Pa.Super. 2014) (holding conscious disregard was established by the fact that the defendant continued to allow her horse to roam free after it had wandered onto a nearby roadway and police had warned her to take steps to prevent it from doing so again); and **Commonwealth v. Cheatham**, 615 A.2d 802, 807 (Pa.Super. 1992) (affirming conviction for homicide by vehicle based upon a collision caused by the defendant blacking out and losing control of his car upon concluding that the Commonwealth proved recklessness by showing that the defendant chose to drive even though he knew that he had a seizure disorder, knew the frequency of his seizures, knew that they came on without warning, and knew that he was not legally permitted to drive because he had not been seizure-free for one year).

what was happening around the country and that she knowingly disregarded a risk of substantial public inconvenience when she posted, "We looting Wal-Mart in Wilkes-Barre, PA tomorrow at 8[.]"

Commonwealth's brief at 11.[3]

We are unpersuaded. First, while the Commonwealth may consider Appellant's claim of surprise at the effects of her post to be incredible, the juvenile court did not. Indeed, it specifically found that Appellant did not grasp the consequences of the social media post prior to initiating it. *See* N.T. Adjudication Hearing, 11/2/20, at 49 ("[Appellant], I believe that when you made this statement you did not understand the effect[.]"). It is well-settled that the determination of Appellant's credibility was solely the province of the juvenile court, which was free to believe some, all, or none of the evidence. *See In Interest of P.S.*, supra at 650.

Moreover, the same argument the Commonwealth proffers here was rejected by our Supreme Court in *Interest of J.J.M*, *supra*. In that case, this Court affirmed an adjudication pursuant to § 2706(a)(3) where the juvenile, shortly after the Parkland school shooting, made a comment in the hallway of his school about wanting to "beat the record," which another student interpreted as referencing a desire to shoot even more victims than

---

[3] Although the Commonwealth has elected to remain vague, we take judicial notice that Appellant's June 2, 2020 Facebook post was made eight days after the death of George Floyd at the hands of Minneapolis police officer Derek Chauvin.

- 12 -

were killed at Parkland. We opined that, in that context, the juvenile surely must have appreciated the effect that his statement would have on his fellow students, yet chose to make his statement anyway. Our High Court reversed, indicating as follows:

> [A]lthough we recognize some listeners might hear appellant's statement as threatening because it was uttered in a school hallway in the wake of the Parkland shooting, that is not enough to prove it was made with a reckless — that is, a conscious — disregard of a substantial and unjustifiable risk of causing terror. There is simply no evidence on this record from which to conclude appellant was aware the ambiguous remark he made might cause a serious public inconvenience or terror, and consciously proceeded to disregard that risk. **See** Appellant's Brief at 33 ("Never was there any testimony or evidence presented that [appellant knew] of any recent school shootings, [or] had acted violently or in a physically menacing manner while at school[.]"); **id**. at 36 ("no testimony was presented that [appellant] had a history of fighting at school, arguing with teachers or other students, or bringing or attempting to bring weapons to the school"). Nor does the mere fact that one unintended recipient overheard it and became subjectively concerned suffice to establish appellant's state of mind.

**Interest of J.J.M.**, **supra** at 274.[4]

---

[4] Only two justices ascribed to this aspect of the J.J.M. opinion. Three others would have vacated the adjudication of delinquency because they believe that the First Amendment prohibits punishing true threats unless the speaker intended the recipient to feel threatened. **See Interest of J.J.M.**, 265 A.3d 246, 288 (Pa. 2021) (Todd, J., concurring, joined by Donohue, J. and Wecht, J.). The remaining two justices agreed that the terroristic threats statute was constitutional and would have affirmed this Court based on the arguments described above. **See id**. at 289-90 (Mundy, J., concurring and dissenting, joined by Baer, C.J.). These various opinions indicate that at least four present members of the Court would deem Appellant's adjudication unsound for one reason or another.

Although a reasonable person could have, and perhaps should have, been aware that her post might cause a reaction that would amount to a public inconvenience, evidence that proves negligence is insufficient to establish a violation of § 2706(a)(3). The Commonwealth was required to offer evidence that convinced the juvenile court that Appellant in fact was conscious of the risk that joking about looting posed, and that she made the decision to post that invitation on her Facebook page anyway. For the reasons detailed above, the Commonwealth failed to meet its burden.

Therefore, we conclude that, because the juvenile court misapprehended the requirements of a determination of recklessness, and instead adjudicated Appellant delinquent upon a factual finding supporting only negligence, Appellant's adjudication of delinquency for acts which, if committed by an adult, would constitute a violation of 18 Pa.C.S. § 2706(a)(3) cannot stand. Consequently, we vacate the juvenile court's November 3, 2020 order in its entirety.[5]

_____

[5] Our ruling on Appellant's first two issues obviates our need to address her claim that § 2706(a)(3) is an unconstitutional violation of the First Amendment. We nonetheless observe that, even if Appellant had not waived the issue by failing to include it in her Pa.R.A.P. 1925(b) statement, Appellant's claim was rejected by four justices in *Interest of J.J.M.*, a case decided after Appellant filed her brief in this Court:

> [T]he First Amendment does not prohibit the States from criminalizing threats made in reckless disregard of the risk of causing fear. It necessarily follows, then, that there is no Constitutional problem with the fact that [§] 2706(a)(3) of the

*(Footnote Continued Next Page)*

Order vacated.

Judge McCaffery joins this Opinion.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/13/2022

---

Crimes Code permits a conviction for terroristic threats, *i.e.*, a true threat, even in the absence of any specific intent to intimidate by the speaker. Rather, we conclude it is enough, to survive First Amendment scrutiny, that the statute requires proof of a conscious disregard of a substantial and unjustifiable risk of terrorizing or intimidating others.

*Interest of J.J.M.*, 265 A.3d 246, 263 (Pa. 2021).