J-S20020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.D.R., III, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: H.D.R., III, A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1705 MDA 2024 |

Appeal from the Dispositional Order Entered October 18, 2024
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-JV-0000079-2023

BEFORE:  BENDER P.J., OLSON J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: JULY 23, 2025**

H.D.R., III, a minor ("H.D.R."), appeals from the dispositional order imposed following his adjudication of delinquency for possession with intent to deliver ("PWID") and possession of drug paraphernalia.[1]  We affirm.

By way of background, the juvenile court summarized the relevant factual and procedural history as follows:

> On January 23, 2023, . . . the York City police department filed a written allegation against H.D.R. alleging [the aforementioned offenses].  On October 1, 2024, a finding/denial hearing was held [during which the Commonwealth presented testimony that o]n . . . January 22, 2023, York City police officers responded to a report of a disorderly subject.  After knocking on the door of the residence, H.D.R. answered wearing a facemask and had his hand on a semi-automatic pistol in his waistband.  The officers ordered H.D.R. to remove his hand from the firearm, and he responded by slamming the door and attempting to flee from the rear of the residence.  The officers then went to [the] rear of the residence to prevent anyone from leaving.  While the

---

[1] ***See*** 35 P.S. §§ 780-113(a)(30), (32).

responding officers were waiting for additional units to arrive, they observed H.D.R. and a woman running up and down the stairs.

Eventually, H.D.R. came out of the residence and was placed into custody. To ensure officer safety, the officers conducted a protective sweep of the residence which resulted in a shotgun [with two shells] being found [in his mother's bedroom]. H.D.R.'s mother arrived and denied consent to search the residence. As a result, a search warrant was sought and granted. During the search, the officers recovered ammunition, marijuana, packaging baggies, and a digital scale. They also located multiple cell phones in H.D.R.'s bedroom. [After H.D.R. was taken into custody he admitted that the shotgun belonged to him.]

The marijuana recovered during the search was as follows: officers found . . . 4.96 grams of marijuana in a sandwich bag by the second-floor windowsill. In H.D.R.'s room, they found a small glass pipe used to smoke marijuana with suspected marijuana residue and a red and black Air Jordan fanny pack. That fanny pack contained approximately 66.72 grams of marijuana in various knotted sandwich bags, small unused packaging bags, and a scale with marijuana residue. The suspected marijuana was sent to the Pennsylvania State Police Laboratory which confirmed the following: 26.72 grams, 13.3 grams, 26.70 grams, and 4.96 grams of marijuana.

At the hearing, the Commonwealth also presented the testimony of Detective S[e]argent Noel V[e]lez [("Detective Velez")], of the York County District Attorney's Office for York County Drug Task force, who was qualified as an expert in the field of narcotics and narcotics investigations. Detective [Velez] testified that typically marijuana is packaged in anything from sandwich bags, tinfoil, plastic containers, *etc*. and that the street value of marijuana varies based on a multitude of factors. Based on Detective [Velez's] expert opinion, he estimated that the value of the marijuana seized from H.D.R. is approximately $1,400.00.

Furthermore, Detective [Velez] explained that there are factors he looks at to see if the possession of a controlled substance rises to the level of PWID. One important factor is the presence of a digital scale. Detective [Velez] testified that he has never seen anyone who is "just a user" of marijuana with a digital scale. Detective [Velez] also stated that the total amount of marijuana found in H.D.R.'s residence, approximately 71.78

grams, is a common weight for distribution because users typically possess between an eighth to a quarter or even a half of marijuana, "[two] and-a-half ounces is not amount [*sic*] that just a user would possess." In his expert opinion, Detective [Velez] explained that users do not buy marijuana in bulk for solely personal consumption. In addition, the presence of unused "fancy bags" typically purchased at head shops is another factor strongly indicating PWID because they are commonly used to sell marijuana in an attempt to appear like the legal CBD items. [Detective Velez also testified that, in his experience, drug dealers commonly possess multiple "burner" phones.] Therefore, based on the totality of the circumstances, Detective [Velez] testified to a reasonable degree of professional certainty that H.D.R. possessed the marijuana in question with the intent to deliver.

Juvenile Court Opinion, 1/16/25, at 2-5 (citations and unnecessary capitalization omitted).[2]

H.D.R. did not testify or present any evidence. At the conclusion of the hearing, the juvenile court determined that the Commonwealth had sustained its burden of proof beyond a reasonable doubt as to both charges. On October 18, 2024, the juvenile court adjudicated H.D.R. delinquent and placed him on probation. H.D.R. timely filed a notice of appeal. Both H.D.R. and the juvenile court complied with Pa.R.A.P. 1925.

H.D.R. presents the following question for our review: "The evidence was insufficient to convict [H.D.R.] beyond a reasonable doubt of [PWID]. The evidence failed to show [H.D.R.] had intent to deliver drugs found within the residence where he resided." H.D.R.'s Brief at 2.

---

[2] For ease of review, when quoting the trial court's opinion, we have changed the trial court's references of "the Juvenile" to "H.D.R."

In his sole issue on appeal, H.D.R. argues that the Commonwealth failed to prove beyond a reasonable doubt that he possessed marijuana with intent to deliver. We begin by noting that "[t]he Juvenile Act[3] grants juvenile courts broad discretion when determining an appropriate disposition. . . . We will disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion." *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014) (citations omitted, footnote added). Moreover, "[i]n a juvenile proceeding, the hearing judge sits as the finder of fact." *In re L.A.*, 853 A.2d 388, 391 (Pa. Super. 2004).

A challenge to the sufficiency of the evidence presents a question of law, for which this Court's standard of review is *de novo*, and our scope of review is plenary. *See Interest of E.L.W.*, 273 A.3d 1202, 1205 (Pa. Super. 2022). Furthermore:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

---

[3] *See* 42 Pa.C.S.A. §§ 6301-6387.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a [juvenile's] innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*Id*. (citation omitted).

To establish PWID, the Commonwealth must prove that: (1) the substance possessed was a controlled substance; (2) the defendant possessed the substance; (3) the defendant was aware of the substance's presence; and (4) ***the defendant possessed the substance with the specific intent to deliver***. ***See*** 35 P.S. § 780-113(a)(30) (emphasis added).

Intent to deliver may be established through circumstantial evidence. ***See Commonwealth v. Ratsamy***, 934 A.2d 1233, 1237-38 (Pa. 2007). It may be inferred from the possession of a large quantity of a controlled substance, particularly when considered in conjunction with other surrounding circumstances. ***See id***. at 1238. Factors to consider when determining whether a defendant intended to deliver a controlled substance include:

the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large[] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. "Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use."

*Id*. at 1237–38. These factors must be assessed under the totality of the circumstances. ***See id***.

- 5 -

The presence of a firearm and ammunitions in close proximity to controlled substances is also a relevant factor in determining whether a defendant possessed the drugs with the intent to deliver. **See Commonwealth v. Knupp**, 290 A.3d 759, 775 (2023). The possession of multiple cell phones — particularly when accompanied by other indicia of drug trafficking — may likewise support a circumstantial inference of an intent to deliver. **See Commonwealth v. Mosley**, 114 A.3d 1072, 1086 (Pa. Super. 2015). Furthermore, it is well settled that a defendant's attempt to flee, escape from custody, destroy evidence, or to otherwise engage in conduct designed to avoid apprehension or prosecution may be admissible as evidence of consciousness of guilt. **See Commonwealth v. Pestinikas**, 617 A.2d 1339, 1347-48 (Pa. Super. 1992).

Despite acknowledging that he "constructively possessed the 67 grams of marijuana" found in his bedroom, H.D.R. challenges the sufficiency of the evidence only as to the element of intent to deliver. H.D.R.'s Brief at 12. Specifically, he argues that the Commonwealth failed to meet its burden based on: (1) the allegedly non-dispositive quantity of marijuana; (2) the presence of a glass pipe suggesting personal use; (3) the asserted absence of other distribution indicators such as — "large amounts of cash[,] tally sheets, customer lists, or business cards[;]" and (4) the fact that multiple individuals occupied the residence. **Id**. at 12-15. He also argues that the shotgun recovered from the residence was not the type of concealable weapon typically

associated with drug dealers, and that the presence of multiple cellphones in his bedroom does not, without more, establish their use for trafficking. **See id**. at 14.

Here, the juvenile court, in reaching its conclusion that the Commonwealth satisfied its burden of proving that H.D.R. had the intent to deliver, considered the testimony of the arresting officers and the expert witness, who testified that the quantity of marijuana, manner of its packaging, as well as the presence of a digital scale with marijuana residue and unused baggies were factors indicative of distribution:

> In the present case, expert testimony established that the amount of marijuana possessed . . . , approximately 71.78 grams, *i.e.*, $1400 worth of marijuana, in and of itself militates heavily in favor that it was not possessed for personal use, but instead possessed with the intent to deliver. However, additional factors were present that supported the conclusion that it was possessed with intent to deliver, including the presence of a digital scale used to weigh the drugs, as well as numerous unused "fancy bags" for the purpose of packaging, sale and distribution. Detective [Velez] based his expert opinion . . . on the significant amount of marijuana [H.D.R.] had in the residence, that the marijuana was packaged in common weights for distribution, the finding of a digital scale with marijuana residue, and the presence of unused packing bags from CBD head shops. The court submits that the evidence, viewed in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, was more than sufficient to find beyond a reasonable doubt that [H.D.R.] possessed the marijuana with intent to deliver.

Juvenile Court Opinion, 1/16/25, at 7 (unnecessary capitalization omitted).

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the evidence of record was sufficient to establish that H.D.R. possessed the marijuana found in his bedroom with the intent to deliver.

Here, the officers recovered approximately 67 grams of marijuana from H.D.R.'s bedroom — a significantly large amount, far greater than what is typically associated with personal use. While the quantity of marijuana alone may not be conclusive of an intent to distribute, it is a factor that, when considered alongside other evidence, supports such a conclusion. ***Ratsamy***, 934 A.2d at 1238. The Commonwealth's expert testified to several such factors present here, including the total quantity of marijuana found in the residence — approximately 71.78 grams — the packaging into individual knotted baggies, the presence of a digital scale with marijuana residue, and the unused packaging materials as factors consistent with distribution rather than personal use. The court, sitting as factfinder, was entitled to accept this testimony and found it credible. ***See Interest of E.L.W.***, 273 A.3d at 1205. Furthermore, officers later recovered a shotgun from the residence and found multiple cell phones in H.D.R.'s bedroom — factors that this Court has also recognized as indicative of drug distribution. ***See Knupp***, 290 A.3d at 775; ***see also Mosley***, 114 A.3d at 1086. Additionally, when H.D.R. answered the door, he (1) placed his hand on a firearm at his waist; (2) slammed the door and attempted to flee through the back of the residence when instructed by officers to remove his hand; and (3) after encountering additional officers outside, retreated into the house, where the officers observed him running throughout the home and up and down the stairs before taking him into custody. These actions further support the inference of consciousness of guilt.

***See Pestinikas***, 617 A.2d at 1347-48. Thus, considering the totality of the circumstances, we conclude that the Commonwealth presented sufficient evidence to sustain H.D.R.'s adjudication of delinquency for PWID. ***See Ratsamy***, 934 A.2d at 1237–38. Accordingly, we affirm the dispositional order.

 Dispositional order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/23/2025