J-A28044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: Y.R.-M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: Y.R.-M., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1015 MDA 2025 |

Appeal from the Dispositional Order Entered July 2, 2025
In the Court of Common Pleas of Dauphin County Juvenile Division at
No(s):  CP-22-JV-0000026-2025

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: NOVEMBER 26, 2025**

Y.R.-M., a minor, appeals from the dispositional order imposed following his adjudication of delinquency for robbery — inflicts bodily injury or threatens or intentionally puts another in fear of immediate bodily injury ("robbery").[1] We affirm.

The juvenile court summarized the evidence presented by the Commonwealth at the adjudicatory hearing as follows:

> On January 6, 2025, Cameron Barcavage [(")]Barcavage") was eating lunch and working on his laptop in his vehicle, which was parked in the parking lot of Tres Hermanos restaurant on Cameron Street [in] Harrisburg. . . . Barcavage looked up to see [Y.R.-M.] approaching his car making gestures with his hands that . . . Barcavage knew as a gang sign (*i.e.* dropping a rake).[2] The

---

[1] **See** 18 Pa.C.S.A. § 3701(a)(1)(iv).

[2] Barcavage testified that the "dropping a rake" sign was

*(Footnote Continued Next Page)*

gesture was meant as a sign of disrespect and intimidation. . . . Barcavage instantly became nervous and [felt] threatened. He identified Y.R-M. as the individual who approached his vehicle at the hearing.

. . . Barcavage asked [Y.R.-M., "[A]re you all right . . . what's good," and Y.R.-M.] said he needed a hundred dollars. [N.T., 6/12/25, at 29. Y.R.-M.] then moved his hand into the zippered pocket of his coat, which . . . Barcavage perceived as the threat of a gun. Out of fear for his safety, . . . Barcavage began to drive away. As he did so he observed [Y.R.-M.] make a "pump fake" motion as if he had a gun, "which . . . did incite fear." [*Id*. at 38.] Barcavage was so frightened for his safety that he dr[o]ve his brand new vehicle over [a] curb onto the street to flee the parking lot, because the exit to the parking lot was blocked by another vehicle. [Y.R.-M.] chased after the vehicle as it exited the parking lot, and . . . Barcavage observed him keep his hand on his chest as he ran.

Harrisburg City Officer John Grant [("Officer Grant")] was on patrol in . . . and responded to the call. Upon arriving at Tres Hermanos, Officer Grant spoke with . . . Barcavage, who told Officer Grant that a male approached his vehicle and demanded money. Officer Grant later located [Y.R.-M.] at the Family Dollar on South 13th Street, learned he was a juvenile, and called his [m]other. According to the officer, [Y.R.-M.] admitted . . . that he had been begging for money. Upon searching [Y.R.-M.], officers found a 9 mm cartridge on [Y.R.-M.'s] person, and charged [Y.R.-M.] with robbery.

In addition to the testimony of . . . Barcavage and Officer Grant, the Commonwealth presented a Google map of the area in question wherein . . . Barcavage identified the location of his vehicle and the direction of travel taken after he tried to flee the

_____

essentially a disrespectful sign. . . . It's almost similar . . . to the Texas Longhorn [sign], but you're dropping a rake. In rap culture it's disrespect[ful and] threatening . . . .

Drop the rake is a term out of Chicago, but it's . . . everywhere now. You're disrespecting somebody. It's basically F you, like screw you, disrespect. [There is an] intimidation factor as well.

N.T., 6/12/25, at 12.

> scene. The Commonwealth also introduced into evidence a 9 mm cartridge found on [Y.R.-M.], a video of . . . Barcavage's interview with the Harrisburg Police, and a video of the January 6th encounter from the Tres Hermanos parking lot.

Juvenile Court Opinion, 9/2/25, at 1-3 (record citations omitted).

Y.R.-M. did not testify or present any evidence at the adjudicatory hearing. At the conclusion of the hearing, the juvenile court determined that the Commonwealth proved beyond a reasonable doubt that Y.R.-M. committed robbery.

On July 1, 2025, the juvenile court held a dispositional hearing in the instant matter and at three other dockets. In a dispositional order entered the following day, the court adjudicated Y.R.-M. delinquent in this matter and committed him to a group home.[3] Y.R.-M. filed a timely notice of appeal. Both he and the juvenile court complied with Pa.R.A.P. 1925.

Y.R.-M. raises the following issue on appeal: "Did the Commonwealth fail to prove by sufficient evidence that [Y.R.-M.] threatened [Barcavage] through the use of a true threat or intentionally place [Barcavage] in fear of serious bodily injury?" Y.R.-M.'s Brief at 5.

A challenge to the sufficiency of the evidence presents a question of law, for which our standard of review is *de novo*, and our scope of review is plenary. ***See In the Interest of E.L.W.***, 273 A.3d 1202, 1205 (Pa. Super. 2022).

_____

[3] A written dispositional order does not appear in the record. However, the juvenile court docket includes a detailed entry on July 2, 2025, setting forth the court's disposition and findings.

When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a [juvenile's] innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*Id*. (citation omitted). We further note that, "[i]n a juvenile proceeding, the hearing judge sits as the finder of fact." ***In the Interest of R.D.***, 44 A.3d 657, 664 (Pa. Super. 2012).

Pursuant to Section 3701(a)(1)(iv) of the Crimes Code,[4] "[a] person is guilty of robbery if, in the course of committing a theft, he . . . inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(iv). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft . . . ." 18 Pa.C.S.A. § 3701(a)(2). The Crimes Code defines

---

[4] ***See*** 18 Pa.C.S.A. §§ 101-9546.

bodily injury as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

This Court has held that an "aggressive act intended to place the victim in fear that he [is] in danger of immediate physical harm [is] sufficient to elevate an attempted theft to robbery" under Section 3701(a)(1)(iv). *Commonwealth v. Leatherbury*, 473 A.2d 1040, 1042 (Pa. Super. 1984). The Commonwealth need not show that the accused "actually inflict[ed] bodily injury" on the victim. *Commonwealth v. Davison*, 177 A.3d 955, 959 (Pa. Super. 2018).

> In determining whether all of the elements of the crime of robbery have been met, a reviewing court will consider the defendant's intent and actions and not necessarily the subjective state of mind of the victim. Whether the victim was in fact put in fear under such circumstances [is] not controlling.

*Id*. at 957 (citations, quotation marks, and brackets omitted).

In this Court, Y.R.-M. does not challenge the Commonwealth's proof as to the "course of committing a theft" element of the robbery offense, nor does he dispute that Barcavage felt threatened during the encounter. 18 Pa.C.S.A. § 3701(a)(1). Rather, Y.R.-M. argues that the Commonwealth fell short of making the necessary showing that he undertook an aggressive act "intended to place [Barcavage] in fear that he was in danger of immediate physical harm." Y.R.-M.'s Brief at 10 (*quoting* **Leatherbury**, 473 A.2d at 1042). Y.R.-M. highlights certain factors that may have caused Barcavage to feel "uncomfortable" during the incident, including the "age difference between the

adult complainant" and thirteen-year-old Y.R.-M. and Barcavage's "subjective fear given the circumstances of Harrisburg." *Id*. at 13. "Ultimately," Y.R.-M. argues, Barcavage's "personal feelings do not mean that [Y.R.-M.] intend[ed] to place him in any fear." *Id*. at 14.

Y.R.-M. notes that Barcavage "did not see a gun" at any point during the encounter, and "[a]ny thoughts [by Barcavage] about what [Y.R.-M.] could have had in his jacket are speculative and insufficient to sustain a conviction." *Id*. at 11, 14. Y.R.-M. asserts that the "bullet discovered [on his person was] *after* the fact of the crime" and therefore "not involved in the crime at all." *Id*. at 11-12 (emphasis in original). With respect to the gang signs, Y.R.-M. contends they were, in Barcavage's words, "disrespectful," and therefore "a far cry from an aggressive act" intended to place him in fear of immediate physical harm. *Id*. at 12 (*quoting* N.T., 6/12/25, at 12). Y.R.-M. further avers that his pursuit of Barcavage's vehicle as he drove away was "not relevant," because he "did not bang on the" car and only began to run "*after* the car drove away." *Id*. at 13 (emphasis in original).

Y.R.-M. argues that the present facts are distinguishable from two prior cases — *Leatherbury* and *Commonwealth v. Swartz*, 484 A.2d 793 (Pa. Super. 1984) — where this Court found sufficient evidence under Section 3701(a)(1)(iv). In *Leatherbury*, the defendant and an accomplice "approached [the elderly victim] from behind, one on each side, . . . grabbed his arms[, and] said, 'Give me your wallet and give me your money.'" *Leatherbury*, 473 A.2d at 1042. Y.R.-M. contends that the defendant's act

of "grabb[ing] the victim . . . and demand[ing his] money" constituted "fully aggressive behavior[,]" unlike here where the Commonwealth relied on "the subjective belief of the complainant." Y.R.-M.'s Brief at 11.

In **Swartz**, the defendant walked into a bank wearing reflective sunglasses, handed a paper bag to a teller, and impatiently demanded she "[f]ill the bag" with cash. **Swartz**, 484 A.2d at 793. This Court held that the defendant's actions "creat[ed] an atmosphere of extreme tension, [which could] be reasonably presumed to intend to inflict fear into the mind of the teller within the meaning of" Section 3701(a)(1)(iv). Y.R.-M. argues that this case is unlike the "classic bank robbery" scenario of **Swartz**, as he engaged in a "dialogue" with Barcavage, wherein he asked for $100. Y.R.-M.'s Brief at 12. Y.R.-M. contends that "[n]owhere in that interaction did [he] threaten [Barcavage, use demanding language] such as 'or else,' or wave a weapon." **Id**. at 13.

In concluding that the Commonwealth satisfied its burden of proving Y.R.-M. committed robbery, the juvenile court determined that Barcavage was "very credible." Juvenile Court Opinion, 9/2/25, at 3. The court found Barcavage's testimony established that Y.R.-M. engaged in the following aggressive acts upon his approach to the car: "flash[ing] threatening gang hand signs which [we]re meant to intimidate and incite fear;" "put[ting] his hand in his pocket" after Barcavage ignored his request for money and "posturing [that he had] a concealed gun;" and "'pump fak[ing]' like he had a gun." **Id**. (*quoting* N.T., 6/12/25, at 38). The court observed that "the threat

continued after . . . Barcavage drove out" of the restaurant parking lot "as [Y.R.-M.] continued to chase the car on foot." *Id*. The court thus concluded:

> Based upon all of the testimony and evidence, the Commonwealth met [its] burden of proving beyond a reasonable doubt that [Y.R.-M.] approached . . . Barcavage wanting money, and intentionally put . . . Barcavage in fear of immediate bodily injury both by hand gestures that were threatening and chasing after the vehicle when . . . Barcavage tried to leave the area.

*Id*. at 3-4.

Viewing the record in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to establish Y.R.-M. committed the offense of robbery. *See Interest of E.L.W.*, 273 A.3d at 1205. As the juvenile court aptly explained, Barcavage testified that Y.R.-M. approached his car, displayed a gang sign, asked for $100, and made hand motions that indicated he had a gun under his jacket. *See* N.T., 6/12/25, at 6, 12-13, 15, 27, 29-30, 33, 38. Contrary to Y.R.-M.'s argument that the gang sign was only "disrespectful," Barcavage testified that it was also "threatening" and "intimidat[ing]." *See id*. at 12. Barcavage further stated that, as he drove away, Y.R.-M. chased after the car and kept his hand in his jacket. *See id*. at 13-14, 35-36. As factfinder, the juvenile court was permitted to find this testimony credible. *See Interest of E.L.W.*, 273 A.3d at 1205. Our review of the restaurant security video played at the adjudicatory hearing demonstrates that it corroborated Barcavage's testimony, as it showed Y.R.-M. approach the driver's side of Barcavage's car, a brief interaction between Y.R.-M. and Barcavage who remained inside in the car, Barcavage's car

swerving around another vehicle to exit the parking lot, and Y.R.-M. chasing the car as it drove away. *See* Commonwealth's Exhibit 3.

While police did not recover a firearm from Y.R.-M., this Court has made clear that an individual's act of "simulating the possession of a gun" may "instill in his victims the highest degree of fear." ***Commonwealth v. Thomas***, 546 A.2d 116, 118 (Pa. Super. 1988). In ***Thomas***, we upheld a conviction under Section 3701(a)(1)(***ii***) for intentionally placing another in fear of ***serious*** bodily injury where the defendant entered a restaurant, announced "this is a robbery," and "held a pointed object under his shirt with one hand" in simulation of a gun. *Id*. at 117-18; ***see also*** 18 Pa.C.S.A. § 3701(a)(1)(ii) (providing that a "person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury"); ***Swartz***, 484 A.2d at 794-95 (upholding Section 3701(a)(1)(iv) conviction notwithstanding that defendant's "action [did not] suggest[] he had a gun"); ***Commonwealth v. Hurd***, 407 A.2d 418, 419-21 (Pa. Super. 1979) (affirming conviction under Section 3701(a)(1)(ii) where defendant entered a clothing store, told employee to open the cash register drawer, and held his hand in "his pocket [with] something in the pocket . . . pointed at" the employee). Equally here, the juvenile court did not err by finding that Y.R.-M.'s act of placing his hand inside his jacket and making a "pump fake" motion instilled in Barcavage the threat of immediate physical harm. N.T., 6/12/25, at 38.

Considering the totality of the circumstances, we conclude that the evidence was sufficient to show that Y.R.-M. committed robbery by threatening and intentionally putting Barcavage in fear of immediate bodily injury during the course of an attempted theft. *See* 18 Pa.C.S.A. § 3701(a)(1)(iv). Therefore, we affirm the dispositional order.

Dispositional order affirmed.


Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>11/26/2025</u>