J-A09009-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.T., A MINOR | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.T. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1469 WDA 2025 |

Appeal from the Order Dated October 14, 2025
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-JV-0000362-2025


BEFORE:  NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: June 18, 2026**

Appellant C.T. appeals from the dispositional order imposed following his adjudication of delinquency for possession of a firearm by a minor, evading arrest or detention on foot, and persons not to possess firearms – delinquent.[1] On appeal, Appellant claims that the Commonwealth presented insufficient evidence that he possessed a firearm.  We affirm.

Briefly, on March 24, 2025, the Commonwealth filed a petition alleging that Appellant, then aged seventeen, was delinquent.  *See* Delinquency Pet., 3/24/25, at 1-4.  The juvenile court held adjudicatory hearings on September 9, 2025 and October 2, 2025.  The juvenile court summarized the relevant facts of the case as follows:

> On March 22, 2025, Officer Hunter Scherf, a City of McKeesport patrol officer, was dispatched to a call for a kidnapping/robbery as

---

[1] 18 Pa.C.S. §§ 6110.1(a), 5104.2(a), and 6105(c)(7), respectively.

a back-up officer. A man reported that he was taken to a secondary location in Crawford Village and robbed at gunpoint by a "group of males." After arriving at the scene, Officer Scherf testified that he kept up with the radio traffic, monitored the area, and drove around looking for anyone who might have been involved with the incident. A desk officer at the police department reviewed the Crawford Village housing camera footage and identified individuals who fit the description of the males who allegedly committed the robbery. The description given was four Black males dressed in all black. After receiving this information via radio, Officer Scherf proceeded to the location where the males were last seen, which was the area of the 42 and 43 Buildings of Crawford Village, also known as "D Block." Officer Scherf, along with another officer, went behind the 42 Building, and noticed Appellant walking around the northeast corner of the building after exiting a stairwell. Officer Scherf and his partner were coming around the southeast corner. Appellant was wearing clothing that matched the description given by the desk officer. The officer followed Appellant but did not call out to him because of how far away he was. Appellant came back around the corner fifteen seconds later, nearly running into the officers during his flight.

Officer Scherf was dressed in full police uniform. When he turned on his flashlight and attempted to speak to Appellant, Appellant grabbed his waistband and took off running. Both officers proceeded to run after him. Officer Scherf testified that Appellant "got past" them, so he communicated a description and flight path of Appellant over radio. The officers chased him down the hill, across Brownlee Avenue, and into a wooded area, where Officer Scherf gave the command to stop running. Appellant did not comply with the command. When entering the woods, Officer Scherf noticed that Appellant was "taking cover" by a large tree. He saw Appellant reach into his waistband before bending down and placing something beside the tree. Officer Scherf reported the movement over radio and shouted it out so that the other officers in the area were aware of it. Appellant continued his flight down through the wooded area, went down to Brownlee Avenue and surrendered.

Meanwhile, Officer Scherf went straight to the tree where he saw Appellant discard the object and located a firearm. It was a loaded handgun. Officer Scherf had another officer stay with the firearm and retrieve it. He then ran down to where the Appellant surrendered and handcuffed him without incident. After the scene

was stabilized, the police ran the gun's serial numbers and discovered that it had been reported stolen.

Trial Ct. Op., 12/11/25, at 1-3 (unpaginated and citations omitted).

On October 2, 2025, the juvenile court adjudicated Appellant delinquent for committing the above offenses and on October 14, 2025 entered a dispositional order, placing Appellant on supervised probation until further order of court. *See* Trial Ct. Orders, 10/2/25, 10/14/25. Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following claim: "Whether the evidence was insufficient to sustain the adjudication of delinquency for possessing a firearm as a minor where the only evidence that [Appellant] possessed the firearm was a vague hand movement and a firearm recovered from near his flight path?" Appellant's Brief at 5 (some formatting altered).

Appellant contends that the Commonwealth failed to prove that he **possessed** a firearm beyond a reasonable doubt. *See id.* at 11. Specifically, Appellant argues that Officer Scherf could not have accurately observed and assessed what Appellant was doing during the foot pursuit due to the nighttime lighting conditions. *See id.* at 13-14. Appellant claims that, because Officer Scherf testified that he did not observe Appellant in active possession of a firearm, the testimony only established that Officer Scherf saw a "gesture." *Id.* at 14.

A challenge to the sufficiency of the evidence in a delinquency matter is a question of law to which we apply a *de novo* standard of review and a plenary scope of review.  ***In re D.B.***, 230 A.3d 379, 387 (Pa. Super. 2020).

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, . . . the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.  The finder of fact is free to believe some, all, or none of the evidence presented.

***In re E.L.W.***, 273 A.3d 1202, 1205 (Pa. Super. 2022) (citation omitted).

Possession of a firearm by a minor may be established by 'constructive possession' rather than actual possession.  ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa. Super. 2018).  "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not."  ***Commonwealth v. McClellan***, 178 A.3d 874, 878 (Pa. Super. 2018) (citation omitted).

> Where a [juvenile] is not in actual possession of the prohibited items, the Commonwealth must establish that the [juvenile] had constructive possession. . .  We have defined constructive possession as conscious dominion, meaning that the [juvenile]

ha[d] the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances. It is well established that, as with any other element of [a charge], constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the [juvenile] exercised dominion and control over the contraband at issue.

*Parrish*, 191 A.3d at 36-37 (citations omitted and formatting altered). Further, circumstantial evidence of constructive possession may include testimony that the "contraband was found in the path of [] flight" shortly after a pursuit by police. *Commonwealth v. Nixon*, 3183 EDA 2023, 2025 WL 673328, at *3 (Pa. Super. filed Mar. 3, 2025) (unpublished mem.) (citing *Commonwealth v. Roberts*, 133 A.3d 759, 768 (Pa. Super. 2016)).[2]

Here, viewed in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, we conclude that the evidence was sufficient to establish that Appellant constructively possessed a firearm. *See D.B.*, 230 A.3d at 387; *E.L.W.*, 273 A.3d at 1205; *see Parrish*, 191 A.3d at 36-37; *Nixon*, 2025 WL 673328, at *3. The evidence established that on the evening of March 22, 2025, Officer Scherf responded to a report of a gunpoint robbery involving perpetrators dressed in all black. *See* N.T., 10/2/25, at 12, 16. While at the scene, he encountered Appellant, who was dressed in black clothing. *See id.* at 15-16. Officer Scherf approached

---

[2] We may cite to unpublished memorandum decisions of the Superior Court filed after May 1, 2019, for their persuasive value. *See* Pa.R.A.P. 126(b).

Appellant, who then attempted to flee. *See id.* at 16. As Appellant fled, Officer Scherf noticed Appellant grab his waistband. *See id.* The pursuit took Appellant and Officer Scherf into a wooded area. *See id.* at 17. While in the wooded area, Officer Scher noticed Appellant "taking cover" by a large tree before Appellant bent down and placed something beside the tree. *Id.* at 17-18. Officer Scherf contemporaneously reported Appellant's actions over the radio to his fellow officers. *See id.* at 18. After Appellant surrendered to police, Officer Scherf went back to the tree where he saw Appellant bend down to discard an item and recovered a loaded firearm at that location. *See id.* at 18-19. As the Commonwealth presented sufficient evidence to establish Appellant constructively possessed a firearm, we therefore affirm Appellant's delinquency disposition.[3]

_____

[3] Appellant contends that the juvenile court erroneously relied on *In re R.N.*, 951 A.2d 363, 370 (Pa. Super. 2008), urging that *R.N.* is distinguishable from the facts here because the police officer in *R.N.* was about ten feet away from the juvenile and had "a close and unobstructed view of a metal item being thrown from a vehicle and that no other metal object could be identified," whereas, here, Officer Scherf was about fifty feet away from Appellant when he saw Appellant make a "movement of taking something out of [his] waistband and putting it at the tree.'" Appellant's Brief at 14-15 (citation omitted).

While Officer Scherf testified that he was not "able to actually see the outline of an item" in Appellant's hand under the visibility conditions in the woods that night, he also testified that he saw Appellant make a movement that was "only consistent in my mind with stashing something by the tree, which is why I was so certain that I put it . . . on the radio, yelled to the other units, didn't check anywhere else other than that tree when we got down there." N.T., 10/2/25, at 44. The juvenile court was free to believe all, none, or part of Officer Scherf's testimony and expressly credited the officer's testimony. *See*
*(Footnote Continued Next Page)*

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/18/2026

---

***E.L.W.***, 273 A.3d at 1205; ***see*** Trial Ct. Op., 12/11/25, at 6. Accordingly, after considering ***R.N.***, we decline Appellant's invitation to conclude that the Commonwealth's evidence was "so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***See E.L.W.***, 273 A.3d at 1205.